Stan S. Mallison, (SBN 184191)
Hector R. Martinez (SBN 206336)
Marco A. Palau (SBN 242340)
LAW OFFICES OF MALLISON & MARTINEZ
1042 Brown Avenue
Lafayette, CA 94549
Telephone:    (925) 283-3842
Facsimile:    (925) 283-3426

Attorneys for Plaintiffs and as expressly authorized by statute on behalf of all current and former aggrieved employees of Defendants.

Michael G. Marderosian, No. 77296
Sue Ann Cercone, No. 143122
Kati A. Franck, No. 236793
MARDEROSIAN, RUNYON, CERCONE,
 LEHMAN & ARMO
1260 Fulton Mall
Fresno, California 93721
Telephone: (559) 441-7991
Facsimile: (559) 441-8170

Attorneys for:  Defendants DENIS PETRISSANS and NANCY PETRISSANS doing business as JAI ALAI DAIRY

UNITED STATES DISTRICT COURT

EASTERN DIVISION OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| GABRIEL CHAVEZ, JOSE GARCIA, FRANCISCO MURGUIA, JUAN MANUEL BERUMEN and JUAN AGUILERA AYALA, on behalf of themselves and all other similarly situated individuals,<br><br>　　　　　　　PLAINTIFFS,<br><br>　vs.<br><br>DENIS PETRISSANS and NANCY PETRISSIANS (doing business as "Jai Alai Diary"),<br><br>　　　　　　Defendants. | Case No. 1:08-cv-00122-LJO-GSA<br><br>**JOINT STATEMENT RE:**<br>**DISCOVERY DISAGREEMENT (AND**<br>**PLAINTIFFS' MOTION TO COMPEL)**<br><br>**Date: August 29, 2008**<br>**Time: 9:30 a.m.**<br>**Courtroom 10**<br><br>**Honorable Gary S. Austin** |

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

## I.    INTRODUCTION

Plaintiffs filed a motion to compel Defendants Denis Petrissans and Nancy Petrissans ("DEFENDANTS") to produce limited discovery for purposes of enabling Plaintiffs to file their motion for class certification. Specifically, Plaintiffs' motion seeks payroll and timekeeping records consisting of approximately one box of documents that Defendants are required by California law to have ready for inspection. These documents are critical to Plaintiffs' class certification motion, as they will demonstrate the "typicality" or "commonality" of Plaintiffs' claims.

Defendants filed an opposition to Plaintiffs' motion. The thrust of Defendants' argument for refusing to produce the requested documents is that third-party privacy rights of non-party employees would be impermissibly invaded. Defendants further assert that they are entitled to and indeed are required to protect the financial information of non-party employees.  Defendants further assert alternative means have been made available to Plaintiffs to either join additional plaintiffs or obtain waivers from non-party employees.  However, Plaintiffs maintain that Defendants have refused to agree to any sampling method as a basis for establishing class certification, or to produce the requested documents with identifying and/or sensitive information redacted.  Plaintiffs have offered to stipulate to a protective order with regards to all of this information and have offered to permit the redaction of employees names (substituting in an ID number).

## II.    NATURE OF THE CASE AND PERTINENT FACTUAL DISPUTES

This is a class action wage and hour case brought by Plaintiffs on behalf of all other similarly situated non-exempt employees of Defendants. Plaintiffs are non-exempt dairy workers.  Plaintiffs assert a claim for relief under the Agricultural Workers Protection Act (AWPA) and California Labor Code. Plaintiffs also assert a claim for relief on behalf of other current and former employees pursuant to the California Private Attorneys General Act ("PAGA"), and an unfair competition claim under the California Business & Professions Code. The PAGA claim is a non-class representative

- 2 -

claim in the manner of an enforcement action on behalf of the State of California. The PAGA is designed to empower aggrieved employees to collect penalties on behalf of the State, current and former employees and themselves after having satisfied certain administrative requirements.

Plaintiffs allege that Defendants employed a set of wage and hour practices and policies that resulted in a systematic violation of their rights to wages and certain working conditions required by law.  In particular, rather than paying these employees hourly, as required by California law, Defendants paid these employees on salary basis.  As a result, Defendants systematically failed to pay Plaintiffs overtime, split shift and other wages.  Defendants also refused to permit rest and meal periods to Plaintiffs as required by state law incurring additional wage violations.

As a result of such violations, the Defendants also violated various derivative statutes including:  AWPA (for breach of working arrangement and failure to keep required records); State recordkeeping and wage statement violations; the California Labor Code Private Attorney General Act; and California's Business & Professions Code.

Defendants have generally denied the allegations of the First Amended Complaint, as well as raised a number of affirmative defenses, including the inappropriateness of handling this matter as a class action. As set forth in more detail below, Defendants assert the provisions of AWPA are not applicable to them as they do not employ migrant or other temporary employees. Plaintiffs submit that the AWPA issue is irrelevant to this motion to compel which concerns all causes of action.

However, Defendants' argument that AWPA does not apply because they do not employ migrant or seasonal agricultural workers is clearly a red herring.  First, because this case involves a "dairy" Plaintiffs and the class are agricultural workers by definition within the meaning of the Federal Labor Standards Act ("FLSA").[1]  Second, Defendants are incorrect in asserting that AWPA

---

[1] "Section 3(f) of the [FLSA] defines 'agriculture' as follows: 'Agriculture includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying ....'" 29 C.F.R. § 780.103. Dairying is also a farming operation and "includes the work of caring for and milking cows or goats. It also includes putting the milk in containers, cooling it, and storing it where done on the farm." 29 C.F.R. § 780.111.

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

does not apply to Plaintiffs and the class because Defendants do not employ "migrant" or "seasonal" workers. As the successor to the Farm Labor Contractor Registration Act ("FLCRA") of 1963, AWPA's protection extends to all workers formerly covered by the FLCRA, and therefore any person whose primary employment is agricultural within the meaning of FLSA, regardless of seasonality, is covered by AWPA.[2]

Defendants maintain they are required to protect the privacy rights of their current and former non-party employees. As such, Defendants cannot produce the requested time card and financial documents. However, Plaintiffs contend that Defendants arguments must fail because: 1) employees have no reasonable expectation of privacy in the documents because they required to be kept for inspection at all times for enforcement actions, 2) the documents at issue are critical to Plaintiffs' class certification as a result of defendants' own arguments, and therefore overcome any privacy issues; 3) Plaintiffs have offered to enter into a protective order with regards to the information, and 4) plaintiffs have offered to permit redaction of these records so as to avoid any of the privacy issues. Plaintiffs further contend that Defendants' refusal to take advantage of Plaintiffs' compromises reveals that the actual purpose of Defendants' objection is to gain strategic advantage in this case and not, actually, to protect the privacy rights of employees that would benefit from this disclosure. Indeed, Defendants regularly disclose this information to their third party accounting and payroll services. Defendants assert this in no way waives the confidentiality of the information.

## III.    DISPUTED ISSUES AND THE PARTIES' RESPECTIVE AUTHORITY

### A. Whether the  requested documents are relevant and not privileged.

#### 1. Plaintiffs' Position & Supporting Authority on Documents' Relevancy.

Under the Federal Rules of Civil Procedure (FRCP), there are two questions that determine whether information is discoverable: (1) is the information relevant? and (2) is it privileged? *See*

---

[2] *See Morante-Navarro v. T & Y Pine Straw, Inc.*, 350 F.3d 1163 (11th Cir. 2003); *Rodriguez v. Bennett*, 540 F.Supp 648 (D.P.R. 1984) (interpreting FLCRA); *Caro-Galvan v. Curtis Richardson, Inc.*, 981 F.2d 501 (11th Cir. 1993); *and* Opinion Letter No. 1575 (WH-522) [Wage-Hour] Lab.L.Rep. (CCH) Admin.Rulings Tr.Binder 1981-87, p. 31,440 at 43,760 (April 23, 1984).

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). The FRCP does not differentiate between private or intimate information on the one hand, and non-private information on the other; so long as the information is relevant and not privileged, it is discoverable. *Id.* Moreover, in the wage-and-hour class action context, documents pertaining to putative class members' wages, hours, work expenses, rest and meal periods, and termination wages are relevant to the numerosity and commonality of Rule 23 certification. *See Hill v. Eddie Bauer*, 242 F.R.D. 556, 561-62 (C.D.Cal. 2007). In *Eddi Bauer*, the court noted that "wage and hour disputes … routinely proceed as class actions" and held that documents consisting of time and wage records are relevant for purposes of class certification, since they assist in showing numerosity and commonality. *Id.* As such, the *Eddi* court ordered production of time and wage records of putative class members. Here, Plaintiffs seek documents that are highly relevant – indeed crucial – to establishing that their wage and hour claims are (1) typical of the class' claims, (2) that there are issues of law or fact that are common to Plaintiffs claims and those of the class, and (3) that the element of numerosity is met.

For example, wage statements belonging to Plaintiff Jose Garcia, produced by Defendants and Bate Stamped JAI 111-JAI 145,[3] show the following violations of Labor Code § 226 and AWPA on their face: (1) failure to include total hours worked (statement shows "1" as number of hours at regular rate); and (2) failure to include all applicable hourly rates (statement shows "1,200.00" as the rate). These statements also show that Garcia was not reimbursed for any expenses (violation of Labor Code § 2802 and AWPA); that Defendants paid a fixed sum of $1,200 twice a month, in the manner of a salary (failing to pay wages at appropriate rates, in violation of Labor Code and AWPA). Plaintiffs' position is that Defendants deny both that the violations occurred and that wage statements of putative class members would show the violations that Garcia's wages statements show. Yet Defendants refuse to produce the records that would put the issue to rest.

---

[3] These statements are attached as Ex. F to the supporting declaration of Stan Mallison, which was filed concurrently with the motion to compel.

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

Similarly, the time records[4] on their face show violations alleged by Plaintiffs in their complaint that Defendants deny. Specifically, pursuant to AWPA, Labor Code § 226 and Wage Order 14-7, Defendants are required to keep accurate time records showing beginning and ending of meal periods. However, Garcia's time records, which were produced by Defendants and Bate Stamped JAI 146-68, show that Defendants failed to record meal periods. (*See, e.g.*, JAI 156.) Further, the time records show split shifts, overtime and doubletime hours worked, and coupled with the wage statements, it becomes clear that Defendants failed to pay minimum, overtime and doubletime wages; split shift premiums; and additional pay for non-compliance with meal period requirements, as Defendants paid a fixed sum regardless of actual hours and actual wages earned.

For example, representative time records belonging to Garcia for the period of January 14, 2008 to January 20, 2008 (JAI 157), and January 21, 2008 to January 27, 2008 (JAI 156), along with the corresponding wage statement for the pay period of January 15, 2008 through January 31, 2008 (JAI 143), show the following:

1. Garcia worked at least one split shift per workday from January 14 to January 27 (JAI 156-57), entitling him to one hour's pay at the minimum wage. Yet his wage statement for the corresponding period (JAI 143) shows that he was paid a semi-monthly fixed amount of $1200, and no split-shift wages. This resulted in a minimum wage violation pursuant to Labor Code §§ 1194, 1197 and Wage Order 14.

2. Garcia's time records (JAI 156-57) show that he was employed eight consecutive days – Monday January 14 to Monday January 21 – and did not receive proper overtime and doubletime compensation for the seventh day of work, as the corresponding wage statement (JAI 143) shows Garcia was paid a semi-monthly fixed amount of $1200. On the seventh consecutive day of work, Sunday January 20, 2008, Garcia worked 10.5 hours and should have been compensated at the overtime rate for the first eight hours and

---

[4] Mr. Garcia's time records are attached as Ex. F to the supporting declaration of Stan Mallison

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

at doubletime rate for the remaining two and one-half hours, as required under Labor Code §§ 500 and 1194, Wage Order 14 and AWPA, which incorporates wages owed under state law.

3. On Saturday, January 19, 2008, Garcia's time records (JAI 157) show that he worked 10.75 hours in a workday entitling him to overtime compensation. Yet the corresponding wage statement (JAI 143) shows no overtime compensation whatsoever.

4. On January 23 and 25, Garcia worked shifts in excess of six hours without a meal period, and on January 14 clocked out for a period of less than thirty minutes that was either a non-compliant meal period or a split shift (JAI156-57). Either way, as the corresponding wage statement (JAI143) reveals, Garcia was not properly compensated, in violation of Labor Code § 226.7 and Wage Order 14.

5. Finally, these representative time records (JAI 156-57) and wage statement (JAI 143) fail to show correct gross and net wages, because they do not account for actual hours worked, do not account for overtime or doubletime, do not account for split shift premiums, and do not account for additional pay for non-compliance with meal period requirements. This is a violation of the Labor Code and AWPA.

Plaintiffs need the records of other employees to demonstrate that Mr. Garcia's violations are not unique.[5]

The violations that appear on the wage statements and time records described above are the core violations alleged in Plaintiffs' complaint. Plaintiffs allege that such violations apply to the class and, as such, have requested class documents for purposes of Rule 23 certification. These documents are clearly relevant to Plaintiffs' claims and there is no conceivable argument Defendants can make to establish otherwise.

---

[5] Plaintiffs believe that for a large number of workers Defendants have failed to properly keep any time records. This fact itself would be relevant to Plaintiffs' class certification motion as it would shift the burden of proof and establish various record keeping violations. See e.g. Hernandez v. Mendoza, 199 Cal. App. 3d 721 (1988)

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

### 2. Defendants' Position & Supporting Authority on Documents' Relevancy.

Plaintiffs' argument regarding relevancy is misplaced. First, the documents which are requested are not relevant to Plaintiffs own individual claims. Second, and more important, even if the court assumes relevance, the determinative issue is the privacy rights of the non-party employees.

Plaintiffs argue that the records produced to date show a number of violations, *e.g.* the specified records of Plaintiff Garcia. Certainly, Mr. Garcia is entitled to make these claims on his own behalf. However, even setting the privacy issue aside, the demanded time card and financial records, alone, will not reflect whether or not any violations have occurred. In order to make this determination, Plaintiffs require additional records from the individual personnel file. For example the requested documents will not disclose the "status" of the particular employee. Certain employees are either exempted or treated differently under the law, including under Industrial Welfare Commission Order 14-2001. Specifically, without additional information from these non-party employees' personnel files, Plaintiffs cannot determine whether or not there has been a violation of the law. For example, the non-party employee may be a family member, irrigator, manager or other exempt classification. This is not a "modest" invasion as alleged by Plaintiffs.

### 3. Plaintiffs' Position & Supporting Authority Regarding Privilege

There is no viable attorney-client, work product or other recognized privilege at issue in the timekeeping and payroll documents requested. Defendants have never been able to express in meet and confer sessions how these privileges could apply. Further, Plaintiffs assert that the wage statements and time records are not privileged, as the right to privacy is not a recognized privilege under federal law. *F. Jadwin, D. O. v. County of Kern*, 2008 WL 2916386 *1 (E.D.Cal. 2008) (the right to privacy is not a recognized privilege or absolute bar to discovery, but instead is subject to balancing of needs). Plaintiffs therefore assert that the only questions at issue in this discovery dispute are whether the documents are *relevant* (discussed above) and to what extent, if any, do

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

putative class members' privacy rights in their time cards and wage statements limit, not bar, production.

### 4. Defendants' Position & Supporting Authority Regarding Privilege

Defendants do agree that the time card and financial documents do not invade the attorney client privilege or work product rule. However to the extent the non-party employees' privacy rights constitute a "privilege," such must be recognized. In fact, as set forth in more detail below, Defendants contend the law recognizes privacy rights as a privilege. Although Plaintiffs cite *Oakes v. Halvorsen Marine Ltd.,* 179 F.R.D 281, 284 (C.D.Cal. 1998) for the proposition that Federal law rather than State law controls this Court when it determines the instant privacy issue, the *Oakes* case clearly does not support this reliance. Instead it holds as follows:

> To the extent privacy is a matter of privilege under state law, federal
> courts will honor the privilege and protect the responding party from
> discovery. (Oakes at 284.)

### B. Whether the requested documents may be withheld on grounds that they constitute private financial information of non-party employees.

#### 1. Plaintiffs' Position and Supporting Authority.

*a. In wage and hour class actions, time and wage records of putative class members are discoverable for purposes of Rule 23 certification subject to a protective order.*

The U.S. District Court for the Central District of California has held that, in the context of a wage and hour class action, time and wage records of putative class members that are relevant to pursuing class certification are discoverable notwithstanding the privacy rights of putative class members. *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562-63 (C.D.Cal. 2007). There, plaintiffs brought a wage and hour class action seeking wages and penalties under the California Labor Code and Business & Professions Code. In order to pursue their claims and to certify a class, plaintiffs requested a category of documents described as "documents pertaining to putative class members' hours, wages, business-related expense, repayment of wages to employer, termination wages, meal

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

breaks and rest breaks." *Id.* at 560. In evaluating defendants' asserted privacy rights of putative class members, the court noted that privacy is "subject to balancing the needs of the litigation with the sensitivity of the information/records sought." *Id.* at 563 (citations omitted). Concluding that the documents requested were relevant and thus necessary to pursuing class certification (as well as to prosecute the case), the court ordered production of the requested documents subject to a limited protective order, by which "any document with an employees' private information [home address, telephone number, and social security number] … *if filed with the Clerk*, shall have that information redacted. *Id.* (emphasis added). Here, Plaintiffs have brought a wage and hour class action on behalf of a class of themselves and similarly situated employees. In order to pursue their claims and to certify a class, they have requested time and wage records of putative class members, which as described above, are not only relevant but vital to both class certification and to establish their case. As such, the documents requested should be produced subject to a protective order to safeguard private information, such as the one ordered in *Eddie Bauer*, as the Court deems proper.

        *b. Type of documents sought and Defendants rejection of a protective order.*

    As a preliminary matter, it should be clear that Plaintiffs do not seek employee personnel files,[6] but merely employee time cards and wage statements, which contain information that is less sensitive in nature than the information contained in personnel files.[7] As a means to allay Defendants' concerns over the privacy rights of their current and former employees, Plaintiffs

---

[6] Plaintiffs note that Defendants have raised the objection that personnel files may be required to establish class certification. Plaintiffs request that the court inquire into this assertion at the hearing and that, if the court sees fit, that it require the production of whatever documents Defendants believe are necessary for class certification purposes.

[7] For example, the time cards do not contain any sensitive information. All they have are the name, day of the week and time that a given employee worked. *See* JAI 146-68. Since Defendants have provided putative class members' names and contact information, the names appearing on time cards are of no concern, nor are the hours and days of work. While the wage statements contain information that may be sensitive – last four digits of employee's social security number, marital status and earnings (*see* JAI 11-45), it is not so sensitive that a protective order would not alleviate all legitimate privacy concerns. Moreover, given that this litigation seeks recovery of wages and penalties, putative class members have an interest in having their information disclosed for purposes of determining whether their rights to wages have been violated.

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

offered on numerous occasions to enter into a protective order, but Defendants rejected every offer. In their opposition and in conference for this statement, Defendants again rejected Plaintiffs' offer, citing a deep concern over employee privacy. Their concern, however, is overstated – at best – and likely disingenuous for a number of reasons. First, since Defendants indicated that they furnish private financial information of class members to their bookkeeper/accountant,[8] Plaintiffs offered to enter into whatever agreement used for the bookkeeper/accountant to safeguard class members' rights, but Defendants essentially ignored Plaintiffs' offer.  Indeed, Defendants appear to have no such mechanism to safeguard private information given to the accountant/bookkeeper. Second, as the court for the Central District of California noted, in class action cases to recover wages, putative class members are not mere third parties but interested persons who themselves may recover from the lawsuit. *Putnam v. Lilly and Co.*, 508 F.Supp.2d 812, 814. As such, putative class members have an interest in the litigation, a reality that Defendants are surely aware of. Third, Plaintiffs offered to obtain a sample of documents that the parties could stipulate were representative of the class. Not only might this be a more efficient way of conducting discovery, but it would also be less intrusive of class members' privacy. Defendants also refused this less intrusive proposal insisting that they would not be bound by the sample for purposes of opposing class certification. Finally, Defendants' repeated refusal to accept a protective order as a compromise demonstrates that they are more interested in improperly denying discovery than protecting class members' privacy.

> c.   *Any privacy concerns are properly addressed by a protective order.*

Although privacy rights asserted in response to discovery are generally recognized in federal courts (*see Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992); *DeMasi v. Weiss*, 669 F2d 114, 119–120  (3rd Cir. 1982)), they are not an absolute bar to discovery and, indeed, may be invaded for litigation purposes. *See Ragge v. MCA/Universal Studios*, 165 F.R.D.

---

[8] *See* Declaration of [Defendant] Nancy Petrissans in Support of Opposition to Motion to Compel Production of Documents for Class Certification ¶ 7.

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

601, 604 (privacy rights under federal and California law must yield when a proper balance between competing interests is struck and disclosure is narrowly circumscribed); *and Oakes v. Halvorsen Marine Ltd.,* 179 F.R.D. 281, 284 (C.D.Cal. 1998) (the right to privacy asserted under the California Constitution is "subject to invasion depending on the circumstances."). Courts do not deny discovery outright when there is a claim of privacy, but rather balance the need for information against the privacy right asserted. *Ragge v. MCA/Universal Studios*, *supra*, at 604. Further, through the use of protective orders the federal rules[9] strike a sensible balance between the broad scope of discovery on the one hand, and the need to protect parties and other persons on the other.  *See, e.g.*, *Li v. Sheltzer*, 2008 WL 2694825 (E.D.Cal.) (where information sought was shown to be relevant, court ordered disclosure of contact, race and ethnicity information subject to an order that such information should not be disclosed to anyone).  Thus, although courts are to apply the discovery rules liberally in favor of disclosure, including when the issue before the court is whether to order production of documents (*see Goldman v. Checker Taxi Co.*, 325 F.2d 853 (C.A. Ill 1963)), federal courts balance the broad reach of discovery by issuing protective orders. *See United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982) ("Rule 26(c), setting forth grounds for protective orders, was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)."). The only requirement is that the party seeking a protective order provide good cause and show particular and specific need for one. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("All motions under these subparagraphs of [FRCP 26] must be supported by 'good cause' and a strong showing is required …." (citation omitted)). Indeed, in wage and hour class actions, time and wage records of putative class members have been ordered produced subject to a limited protective order. *See Hill v. Eddie Bauer*, *supra*, at 563 (production of time and wage records of putative class members ordered subject to redaction of private information

---

[9] Discovery matters are governed by the FRCP in federal question cases such as this one. See Hanna v. Plumer, 380 US 460 (1965); see also Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003) (the FRCP apply "irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.").

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

(address, telephone and social security) if filed with Clerk).

Here, Plaintiffs have shown above that the time cards and wage statements sought are not only relevant but critical to establish commonality and typicality for purposes of class certification.[10] Curiously, Defendants, deny that the documents of putative class members will show typicality and commonality, placing the matters at issue yet refusing to produce the exact documents which would resolve this issue. Defendants refusal to accept a protective order while simultaneously asserting privacy objections is not only contradictory, but improper, as it demonstrates that Defendants are more interested in thwarting the legitimate pursuit of information to litigate this class action than they are concerned about the rights of their workers. Indeed, as the court for the Central District of California noted in a class action case to recover unpaid overtime, where the information sought ". . . concerns not disinterested third parties, but rather potential plaintiffs themselves," the need to disclose is particularly compelling. *Putnam v. Lilly and Co.*, 508 F.Supp.2d 812, 814. This conclusion about Defendants' motives for refusing production is further bolstered by the fact that the information sought is shared with Defendants' bookkeeper(s)/accountant(s), apparently without any safeguards.

While noting that the time cards do not present any privacy concerns, Plaintiffs are still willing to subject disclosure of wage statements *and* time cards to a protective order, and request the Court to order production accordingly.

> d. *Defendants bases for refusing production are not justified and do not support a complete bar to discovery, as the balance of interests weighs in favor of disclosure.*

As stressed above, Plaintiffs seek a narrowly circumscribed set of documents for all putative class members – i.e., time cards that contain little if any private information and wage statements.

---

[10] As noted above, these documents show that Defendants did not pay Plaintiffs for actual hours worked, but paid instead a fixed amount that did not account for all overtime and doubletime wages earned, and did not include split shift wages or additional meal period pay. The records also show that Defendants do not keep accurate time and wage records and do not reimburse expenses. Plaintiffs allege that this is a class-wide problem, but Defendants deny this, despite the fact that it is apparent in the records produced for named Plaintiffs.

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

These documents are necessary to show numerosity, typicality and commonality of Plaintiffs' claims for purposes of Rule 23 certification. While the information sought is, to a certain degree, private and subject to balancing, Plaintiffs should not be barred from obtaining it under the FRCP or California law. *See Ragge v. MCA/Universal Studios*, *supra*, at 604.

Defendants assert in their opposition that Plaintiffs do not have a compelling need for the documents sought and that there are less restrictive means for obtaining the information is baseless, and cite cases that purportedly support their refusal to disclose. But Defendants' position is flawed. First, Defendants rely on California case law regarding the notice procedure for obtaining identity and contact information of putative class members. However, the case before this Court is governed by federal law, and the notice procedure of state law is inapplicable. Indeed, only in diversity actions are privacy *claims* determined under applicable state law. *Oakes v. Halvorsen*, *supra*, at 284. Notice to class members as a prerequisite to disclosure is a California procedural matter that is not applicable in federal court, even in diversity cases. *See Fagin v. Gilmartin,* 432 F.3d 276, 285, fn. 2 (3rd Cir. 2005) (discovery is a procedural matter governed by the federal rules). Further, as highlighted above, under federal law privacy is not an absolute bar to discovery; rather, privacy rights are subject to invasion for purposes of litigation on a proper balancing of interests. *Ragge v. MCA/Universal Studios*, *supra*, at 604. The procedure for determining whether, when and how to disclose private information is provided by the federal rules, and Defendants are well aware of this fact. Indeed, they did not argue for employing California notice procedures before disclosing names and identities of current and former employees, all of whom are witnesses to the wage and hour allegations in Plaintiffs' complaint, as disclosure of such information is routine and required by FRCP 26. Notwithstanding this, Defendants suddenly became concerned with employee privacy, and erroneously argue that California procedural requirements provide grounds for refusing to produce.

Second, the cases Defendants rely upon are not controlling. *Belaire-West* is about providing an opt-out notice to putative class members prior to disclosing their identities and contact information; it does not govern or relate to disclosure of time or pay records. As such, it is inapposite. Further, as discussed above, Defendants already disclosed identity and contact information without notice. They should be estopped from now attempting to suggest that notice is required for time and pay records, particularly when under federal law no such notice is required and a protective order can safeguard

- 14 -

class members' privacy.

Similarly, Defendants' reliance on *El Dorado Savings & Loan* is unavailing. That case dealt with discovery of employee *personnel records*, while Plaintiffs' motion is limited to time and wage records, which are less sensitive. Personnel files require greater protection because they may include all sorts of private information about an employee, such as job performance, warnings, negative evaluations, drug test results, etc. For that reason and because this discovery is for purposes of Rule 23 certification, Plaintiffs have expressly narrowed their request to time cards and wage statements, noting that time cards by themselves contain no significantly sensitive information (name of employee, work dates and punch in-and-out information), while agreeing nonetheless to safeguard sensitive information. Although wage statements contain some private information (name, last four digits of social security number, marital status, wage rate, earnings and payroll deductions), it is less sensitive than information contained in a personnel file. Further, Plaintiffs do not need the most sensitive information for purposes of class certification, i.e., marital status and last four digits of social security number, and would agree to redact that information.

Third, Defendants' argument that Plaintiffs should seek authorizations from class members as a less intrusive means is both disingenuous and without authority. Plaintiffs offered to stipulate that the documents obtained through class members' authorizations to release information would be representative of the class, but Defendants refused. Plaintiffs made a similar offer to employ a sample of documents and stipulate that they are representative of the class, but Defendants refused. Moreover, Defendants have gone the extra step of arguing that the documents belonging to named Plaintiffs, which demonstrate numerous wage and hour violations alleged in the complaint, such as payment of a fixed, semi-monthly sum that does not account for overtime, doubletime or split shift pay, are unique and different than other employees' records. In other words, Defendants' position is that any violations appearing on Plaintiffs' records are not typical or common to the class. Given that Defendants deny that these and other violations occurred on a class-wide basis and refuse to stipulate to a representative sample, Plaintiffs are in the position of seeking the documents needed for Rule 23 certification from Defendants as to all putative class members. Further, it should be noted that Defendants control virtually all the information necessary to establish wage and hour violations alleged in this case, as they generate employee records and are required by law to maintain it. While

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

they refuse to provide the information to Plaintiffs even under a protective order, Defendants will have unfettered access to it in opposing class certification. Defendants will no doubt pick and choose documents that may contradict Plaintiffs' claims, but Plaintiffs will have no access to them. Such a situation would be unfair and unjust, and is precisely the type of situation that the discovery rules are designed to avoid.

Fourth, there is no authority for Defendants' position that, because they have already disclosed class member identity and contact information, they should not be required to disclose wage statements and time cards. While Defendants point to notice procedures under California law to oppose discovery, they cite to no federal or California provision that would require a notice to obtain such information after identity and contact information has already been disclosed. As such, Defendants fail to justify their refusal to produce.

> e.  *The Document Request Does not Violate Privacy Rights of Employees.*

California Labor Code §§ 226, 432 and 1174 mandate that employers maintain and preserve payroll records and additionally provide that they be made available for inspection at any time, so that workers, such as those for whom Plaintiff is seeking recovery, may verify that wages are properly paid.   These sections, and the regulations properly promulgated thereunder, expressly require that the records requested in Plaintiff's document request be maintained and made available for inspection for the express purpose of permitting the efficient enforcement of California wage and hour laws.  *See*, *e.g.*, Cal. Labor Code § 1174 (every person employing labor in this state shall (a) Furnish to the commission at its request, reports or information that the commission requires to carry out this chapter.)   It necessarily follows that these documents must be made available through discovery when a Plaintiff brings those wage and hour claims on behalf of himself, the Class, or pursuant to the California Labor Code Private Attorney General Act. §§ 2698 *et seq*.  These payroll documents are more than relevant to their claims; they are *necessary* to proving them and serve as the basis for these claims.  Plaintiff's discovery request seeks these basic payroll records (*e.g.*, time cards, hours paid, wage rates, rest and meal breaks)—the core documents necessary to adjudicate the claims of Plaintiff and the Class in this case.  Indeed, it is unlikely that there is any justification for

- 16 -

prohibiting the production of payroll documents whose sole existence and purpose is to serve as evidence in exactly this type of proceeding.  Further, at least one federal court ordering production of time and wage documents in a class action has suggested that, aside from employee telephone, address and social security, the financial information contained in such documents – rate of pay, hours worked and wages earned – are not private such that a protective order is required. *Hill v. Eddie Bauer*, *supra*, at 563 (production of time and wage records of putative class members ordered subject to redaction of private information (address, telephone and social security) if filed with Clerk).For purposes of California privacy rights, courts must examine three "threshold elements" in order to "screen out claims that do not involve a significant intrusion on a privacy interest." Loder v. City of Glendale, 14 Cal.4th 846, 893 (Cal.1997); see also Am. Academy of Pediatrics v. Lungren, 16 Cal.4th 307, 331 (1997). These elements, first enumerated in Hill v. Natl Collegiate Athletic Assn., 7 Cal.4th 1 (Cal.1994) (Hill), require the claimant to: (a) identify a "specific, legally protected privacy interest," (b) to demonstrate a "reasonable expectation of privacy" under the particular circumstances, and (c) to show that the threatened action represents a "serious invasion" of that privacy interest. Hill, supra, at 35-37.

Here, any intrusion upon putative class members' privacy interest is at best modest, while the justification for producing the information is strong. The information sought intrudes only mildly upon the putative class members' privacy interests. Only informational privacy is at stake, and the information sought is not particularly sensitive as it concerns documents that are open to inspection at any time by the State of California and is freely distributed by Defendants to their bookkeeper/accountant and third party payroll service providers.  Moreover, the intrusion will be minimal in that only counsel for the putative class will have access to the information.  The information may be produced pursuant a protective order that strictly limits the use of the information as offered by Plaintiffs. No harm to the putative class members is threatened. See Schnabel v. Superior Court, 5 Cal.4th 704 (Cal.1993) (in weighing privacy interests of third parties

- 17 -

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

against litigants need for information, court should consider specific harm that disclosure of the information might cause.) Indeed, putative class members will ultimately benefit from this discovery, as Plaintiffs use the information for its only useful purpose: to recover unpaid wages and penalties. As such, putative class members likely have an interest in Plaintiffs' pursuing the class claims, making disclosure even more compelling. See Putnam, supra, 508 F.Supp.2d at 814.

Indeed, while the intrusion to informational privacy interests here is weak, the justification for production is strong. The information sought here is not only relevant but to Plaintiff's efforts to demonstrate numerosity, typicality and commonality concerning Defendants' failure to pay wages for purposes of its class certification motion. This case is primarily about Defendants' payroll practices and Plaintiff seeks nothing more than information about Defendants payroll records themselves. Moreover, two important public policies weigh in favor of disclosure.

First, the state and federal government has an interest in vindicating the truth-finding function of litigation and of vindicating the rights of workers through litigation. Indeed, the California legislature added PAGA to enhance workers' ability to enforce the Labor Code by permitting private recovery of civil penalties. Plaintiffs have filed a PAGA claim and it is Plaintiffs' position that as a private attorney general, Labor Code § 1174(b) authorizes Plaintiffs to audit Defendant's payroll and timekeeping records to ascertain the wages and penalties owed to putative class members.

Second, the information is necessary to put the parties on an equal footing in investigating the putative class claims and moving for class certification. As things now stand, counsel for Defendants have unfettered access to payroll information, while Plaintiffs have none. Fairness demands that Plaintiff and counsel for the proposed class have equal access to the payroll information for Class Members. See Schnabel, supra, 5 Cal.4th at 712-714 (discovery orders should be tailored to protect the interests of the requesting party in obtaining a fair resolution of the issues, while not unnecessarily invading privacy of third party; where possible, courts should impose partial

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

limitations, rather than outright denial of discovery); Doyle v. State Bar, 32 Cal.3d 12 (Cal.1994) (although attorney's clients had reasonable expectation of privacy regarding their financial information contained in attorney's files, that privacy interest is not absolute and must be balanced against the need for disclosure.)

**2. Defendants' Position & Supporting Authority**

    *a. The subject document request does violate the privacy rights of the non-party employees.*

Plaintiffs cite absolutely no controlling authority which supports an employer is authorized to disclose the private financial records of their non-party employees. In fact, Defendants have found none. Cases cited by both parties indicate that courts have been willing to order disclosure of employee contact information. However, no controlling authority has been cited to support disclosure of documents such as the time keeping and financial records sought by Plaintiffs in the instant motion. Instead, as set forth below, courts have ordered the disclosure of contact information in order to provide the adverse party with the ability to *investigate* and obtain the information themselves directly from the non-party employees.

In the moving papers, Plaintiffs primarily cite to two decisions in support of their effort to force disclosure of non-party employees payroll and timekeeping documents: *Hill v Natl Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 and *Schnabel v. Superior Court* (1993) 5 Cal.4th 704. Although both cases provide some guidance in how to weigh the privacy interests and the importance of the requested documents to the litigants, neither case is on point with the facts of the case at hand.

First, *Hill* relates to the privacy rights of college athletes with regard to the required NCAA drug testing. These facts are different in that the students are *knowingly* taking the drug tests in order to compete in college athletics. The issue is not one of *unassuming employees* having their financial information distributed without their authorization or knowledge.

Second, Plaintiffs attempt to support their position through the *Schnabel* decision. As with *Hill*, the facts in *Schnabel* are too remote to be relevant to the facts before this court. *Schnabel* is a

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

case dealing with a divorce, where Wife is attempting to get the personal tax returns of a non-party corporate shareholder.  The court does discuss the weighing of privacy interests of third parties against that of the litigants need for information.  However, it concludes that the Wife's interests do not outweigh the privacy rights of the non-party shareholder.

However, there is case law which actually provides guidance and supports Defendants' position.  *Belaire-West Landscape, Inc. v The Superior Court of Los Angeles County* (2007) 149 Cal. App. 4th 554, is on point with the issues at hand in that it involved a putative class action lawsuit alleging wage and hour violations. (*Id.* at 556) Actually, the Plaintiffs in *Belaire-West Landscape, Inc.* were only seeking the names, addresses and telephone numbers of the defendant employer's current and former employees. (*Id.*)  Plaintiff's counsel wanted the information so they could communicate with the non-party employees about the amount of overtime they may have worked for the defendant employer. (*Id.* at 557.) The trial court held that the names of current and former employees should be disclosed to the plaintiffs, but only after a notice was sent out advising the individuals their information would be disclosed unless they decide to respond and opt-out. (*Id.*)  In its analysis, the trial court stated that the information the non-party employees gave the defendant employer was likely as a condition of their employment and as such they would expect that the information not be divulged externally.  (*Id.* at 561.)  Further, that expectation was reasonable in "light of employers' usual confidentiality customs and practices." (*Id.*) Defendant employer filed a petition for writ of mandate and sought immediate stay.  (*Id.* at 558.)

The appellate court agreed with the trial court and determined that the proposed opt-out notice would be adequate in protecting the privacy rights of the those involved. (*Id.* at 562) The appellate court's reasoning is particularly pertinent here.  The *Belaire-West* court noted that the information being sought "was not 'particularly sensitive,' as it involved disclosing neither one's personal medical history or current medical condition, nor details regarding one's personal finances or other *financial information...*" (*Id.* at 559, citing *Pioneer Electronics (USA), Inc. v Superior Court*

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

(2007) 40 Cal 4th 360,372.) (Emphasis added.)

Here, Plaintiffs are not merely seeking the names, addresses and telephone numbers of the Jai Alai's current and former employees.  Plaintiffs are now seeking to discover the personal and very sensitive *financial information* without the employees consent.

In fact, as set forth in the supporting declarations of Defendant Nancy Petrissans and Sue Ann Cercone, Jai Alai has already disclosed, without waiver of any objection or privileges,  the names, addresses and telephone numbers of all of their current and former employees.   Plaintiffs have long had this information available.  This would have allowed Plaintiffs to discover the protected information without attempting to force Defendant employer to violate the confidentiality inherent in the non-party employees financial  information.

On April 4, 2008, Defendants' Rule 26(a) Disclosure was served on Plaintiffs' counsel.  This included the names and last known addresses for current and former employees of the Arvin (Kern County) Dairy where Plaintiffs are/were employed.  Thereafter on April 10, 2008, Defendant served a supplemental disclosure identifying the last known telephone numbers of the Arvin employees.  Finally, on May 1, 2008, Defendants served a second supplemental disclosure which identified the names, addresses and telephone numbers for all former employees of Jai Alai Dairy at is prior location in San Bernardino County.

As a part of Defendants production response to for request for documents (set one) employee contact lists were provided for the current and former Jai Alai employees, both in Kern and San Bernardino Counties.  This identified names, last known phone numbers, last known addresses and dates of employment.  (See Cercone Declaration with attached documents identified as JA 1199 and JA 1200).

That is, Plaintiffs have clearly had the ability to contact the non-party employees through the mail and/or telephone to either join them in the litigation or obtain waivers of privacy rights from them.  Jai Alai has advised Plaintiffs that to the extent additional employees join in the litigation, the

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

financial and personnel information maintained for those employees will be provided.  (See Cercone Declaration.)  Jai Alai has not received any notice from its employees, past or present, requesting that their information be released.  (See Petrissans Declaration.)  Likewise, counsel for Defendants has not received notice of additional employees joining in the litigation nor been provided with waivers to release the non-party information.  (See Cercone Declaration.)  Instead, Plaintiffs are attempting to force Jai Alai into violating those non-parties rights' of privacy by demanding Jai Alai turn over their private financial information.

*El Dorado Savings & Loan Association v The Superior Court of Sacramento County* (1987) 190 Cal App 3d 342, is also relevant.  In *El Dorado*, the Plaintiff employees filed a lawsuit against their former employer company stating they were discriminated against based upon their age and sex. (*Id.* at 344.)  Plaintiffs sought production of the personnel records of a non-party employee who they were alleging sat in the same capacity as Plaintiffs.  (*Id.* at 345.)  Plaintiffs argue disclosure of his personnel records was necessary to facilitate a prosecution of their employment discrimination action. (*Id.* at 344-345.)  In determining whether the non-party employee had a constitutional right to privacy, the Court stated that, "*Article I, section I, of the California Constitution* secures all people the right of privacy.  The 'inalienable right' of privacy is a 'fundamental interest' of our society, essential to those rights 'guaranteed by the *First, Third, Fourth, Fifth and Ninth Amendments of the U.S.Constitution*." (*Id*. at 344, citing *Board of Trustees v. Superior Court* (1981) 119 Cal. App. 3d 516, 524-525, quoting *City of Santa Barbara v. Adamson* (1980) 27 Cal. 3d 123, 130.)

The *El Dorado* court further stated, "In the context of discovery of confidential information in personnel files, even when such information is directly relevant to litigation, discovery will not be permitted until a balancing of the compelling need for discovery against the fundamental right of privacy determines that disclosure is appropriate. And even when the balance tips in favor of disclosure, constitutional concerns require strict circumspection of the scope of the disclosure." (*Id.* at 346, citing *Cutter v. Brownbridge* (1986) 183 Cal. App. 3d 836, 843.)

- 22 -

The *El Dorado* court held that the record before them was inadequate to require disclosure of the entire personnel file. (*El Dorado* at 346.) They based their decision on two considerations.  The first was whether there was a less intrusive means to yield such information, such as deposing the non-party employee.  (*Id*.) The second was that even if no less intrusive means were available to satisfy plaintiffs' legitimate need for relevant information, then the court should first examine the file in camera and only order disclosure of the relevant information. (*Id*.)

As set forth above, Plaintiffs already have been provided a less intrusive means for obtaining the requested information.  Since they have already been provided the contact information for all current and former employees, Plaintiffs can contact them directly to obtain the information or an authorization form allowing Jai Alai to release the information.  Defendants assert they cannot release further information without violating the privacy rights of the non-party employees.

Plaintiffs apparently are now relying on *Putnam v. Lilly and Co.*(2007) 508 F. Supp.2d 812 to support their position that Jai Alai should produce private financial documents of the non-party employees.  However their reliance on *Putnam* is also misplaced.  In fact,  *Putnam* supports Jai Alai's position.

In *Putnam*, the court ordered Defendant Employer to produce the names, addresses and telephone numbers of 348 non-party employees so that Plaintiff Employee could, "fully investigate the case and gather evidence for the presentation at the certification hearing." (*Putnam* at 813.)

Jai Alai recognizes this and similar holdings, and as such has already produced all of the names, addresses and telephone numbers of their current and former non-party employees.  The purpose of such production was to allow Plaintiffs to fully investigate their case and gather the evidence they needed for their certification hearing.  Plaintiffs have had this information since April 4, 2008 when Jai Alai served their Rule 26(a) Disclosure on Plaintiffs' counsel which identified the information for the Kern County employees. By May 1, 2008 Defendants had served the Second

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

Supplemental Disclosure which identified the names, addresses and telephone numbers for all former employees of Jai Alai Dairy at its prior location in San Bernardino County.

Additionally, in the case at hand, there are less than 50 non-party employees identified which Plaintiff can investigate, unlike the 348 non-party employees in Putnam.  This motion is not supported by *Putman* nor any other case law.

Finally, Plaintiffs have recently raised *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562-63 (C.D. Cal. 2007).  First, it should be noted that while this decision may be informative, the *Hill* decision does not control this court.   Additionally, the decision is factually distinguishable in that the Central District was confronted with a nationally recognized, publically traded employer company, Eddie Bauer.  Further, unlike the instant matter, Eddie Bauer had not provided contact information to Plaintiffs which allowed them to investigate as Jai Alai has done here.  The *Hill* case lacks any "discussion" by the court as to the balancing process which it followed in making its decision. Finally, it is also unclear the exact nature of the documents to be provided by Eddie Bauer.

Clearly, the weight of controlling case authority authorizes the disclosure of contact information by defendant employers in order to allow the *plaintiffs to complete the necessary investigation in anticipation of the certification process*.   Jai Alai provided this information to Plaintiffs with ample opportunity for Plaintiffs to conduct their investigation accordingly.  Plaintiffs have failed to do so.

       *b.  Defendants have not waived non-party privacy rights.*

First, Defendants cannot waive the privacy rights of their employees.  Those *privacy rights belong to the employee*, not to Jai Alai.

Second, although Defendants have disclosed the names, addresses and telephone numbers of their non-party employees, this does not constitute a waiver.  This is consistent with case law

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

including the majority of decisions cited by Plaintiff.  Specifically the court in *Puerto v. The Superior Court of Los Angeles County* (2008) 158 Cal. App. 4th 1242 held as follows:

> The fact that we generally consider residential telephone and address information private does not mean that the individuals would not want it disclosed under these circumstances. 'While it is unlikely that the employees anticipated broad dissemination of their contact information when they gave it to [the employer], that does not mean that they would wish it to be withheld…' (citation omitted) from plaintiffs seeking relief from violation of employment laws in the work place that they shared. (*Id* at 1253.)

Third, the non-party employee information was specifically provided *without waiver*. Defendants are somewhat surprised that what they considered a good faith effort to cooperate in discovery is now being used against them. Again, consistent with case law, Defendants provided contact information for non-party employees so that Plaintiffs could *investigate* and obtain whatever information or waivers they deemed necessary.

Finally, Plaintiffs' argument that the release of financial information to the bookkeeper/accountant waives the right of privacy is ludicrous.  Such information is provided as a legitimate business practice and within the course of Defendants' business activity where no waiver can be inferred.  For example, even though an accountant may prepare tax documents for a defendant, this does not automatically give rise to discovery of such tax documents during the course of a civil lawsuit.

     *c.  Plaintiffs' offers to redact or enter into a protective order are insufficient.*

Plaintiffs have attempted to argue that they will accept redacted copies of the non-party employees' records.  Plaintiffs have also offered to accept data with employee identification numbers rather identifying information such as names or addresses.  (See June 23, 2008 correspondence of Stan Mallison attached to Cercone Declaration.)  However, this is not an acceptable resolution for several reasons.  As addressed in detail above Defendants are concerned with releasing confidential employee information.  As set forth in the declaration of Nancy

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

Petrissans, defendants believe the requested information is confidential and particularly sensitive. Even in the daily operation of Jai Alai Dairy, access to this information is limited. As Nancy Petrissans sets forth, the financial information is kept secure with access limited to herself, her husband Denis Petrissans and the Dairy bookkeeper/accountant.

Further, Plaintiffs have already requested and received the names of all employees, along with the dates of their employment. Even if numbers were assigned to the information, it would be easy to determine the actual identity of the employees by comparing the payroll dates to the employment dates already provided.

Plaintiffs have also offered to enter into a protective order. Again, Defendants cannot agree. Defendants cannot waive the right of privacy which belongs to their non-party employees. Further, as set forth in detail above, in order for the requested documents to be meaningful, additional information is required from the non-party employee personnel files. This is highly intrusive.

>    *d.  The provisions of the Migrant and Seasonal Agriculture Workers Protection
>    Act are inapplicable.*

To the extent Plaintiffs base their motion on the first cause of action alleging violation of the Migrant and Seasonal Agriculture Workers Protection Act ("MSPA" 29 U.S.C. sec.1801 et seq.), such reliance is misplaced. As set forth in the declaration of Nancy Petrissans, Jai Alai Dairy has never employed migrant, seasonal or other temporary employees. Accordingly, under the definitions of protected workers under section 1802, the provisions of the subject act are inapplicable to Defendants.

>    *e.  Plaintiffs have had sufficient information and time to investigate and obtain
>    the demanded information. Plaintiffs themselves are responsible for any delays
>    in bringing the instant motion or otherwise pursuing discovery.*

Plaintiffs' motion indicates that the Defendants have abruptly backed out of a long standing commitment to resolve the case by mediation. (Motion to Compel, p.3.) Plaintiffs also accuse the Jai Alai defendants of having taken advantage of Plaintiffs' good faith and generally causing delays in the filing of the instant motion. (Motion to Compel, p.12.) Finally, Plaintiffs apparently accuse the

- 26 -

Jai Alai defendants of apparent bad faith in their refusal to move the date set for the class

certification motion. (*Id*.) None of these accusations is justified. In fact, as set forth below, it is

Plaintiffs who have caused any delays in the case to date.

    As set forth in the Declaration of Defendants' counsel, Sue Ann Cercone, on April 4, 2008

Defendants' Rule 26a Disclosure was served on Plaintiffs' counsel. This included the names and

last known addresses for current and former employees of the Arvin (Kern County) Dairy where

Plaintiffs are/were employed. Thereafter on April 10, 2008 Defendant served a supplemental

disclosure identifying the last known telephone numbers of the Arvin employees. Finally, on May 1,

2008 Defendants served a second supplemental disclosure which identified the names, addresses and

 telephone numbers for all former employees of Jai Alai Dairy at is prior location in San Bernardino

County.

    As a part of Defendants production response to the Request for Documents (Set One)

employee contact lists were provided for the current and former Jai Alai employees, both in Kern

and San Bernardino Counties. This identified names, last known phone numbers, last known

addresses and dates of employment. (See Cercone Declaration with attached documents identified

as JA 1199 and JA 1200).

    Consequently for almost four (4) months, Plaintiffs have had information which allowed

them to contact non-party employees to either join those employees as plaintiffs or obtain waivers

for the release of the currently sought documents.

    It is true that by email dated May 22, 2008 counsel for Jai Alai Dairy did confirm the

willingness of her clients to participate in early mediation with retired Judge Howard Broadman.

This was in follow up to a telephone conversation between attorney Cercone and attorney Mallison

on approximately May 20, 2008. However, it was not until approximately one month later that

Plaintiffs' counsel re-contacted attorney Cercone to indicate a willingness to engage in mediation on

the part of Plaintiffs. This was conditioned on disclosure of the non-party employment information

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

outlined in Mr. Mallison's June 23, 2008 correspondence.  Slightly over a week later by correspondence dated July 3, 2008 Defendants' advised attorney Mallison of their inability to agree to the requested disclosure of non-party employee information.   On that same date, July 3, 2008, counsel for Defendants advised Mr. Mallison by telephone that Defendants would stipulate that the parties were at an impasse.  This was in an effort to cooperate so that to the extent Plaintiffs felt they needed to compel production, Plaintiffs could do so immediately.  However, the instant motion was not filed by Plaintiffs until July 25, 2008.

It should be noted that the July 3, 2008 correspondence confirmed that to the extent additional employees joined in the litigation, Defendants were willing to provide information/documents of the same nature that had been previously produced for the named Plaintiffs.  No request was ever received indicating additional employees were being joined.

Three (3) weeks later counsel for Jai Alai Dairy received a telephone message from attorney Mallison requesting a stipulation to extend the time limits set by this court.  Although Plaintiffs accuse the Jai Alai Defendants of bad faith in the refusal to stipulate, this is totally unfounded. Defendants have sought to always respond in a timely manner, and as set forth above Defendants believe they have done so.  Further, as set forth in the supporting declaration of Nancy Petrissans, she and her husband wish to proceed with the litigation in a timely fashion in order to eliminate both the stress inherent in the process as well as the impact on various business decision for the dairy. Denis Petrissans has been diagnosed with cocciperitonitis (valley fever).  Stress aggravates his condition.  Clearly, Defendants have sought to cooperate and to the extent, if any, that Defendants have denied requests of the Plaintiffs, these denials have always been well founded and within Defendants' rights.

Finally, Plaintiffs argue that document production should be ordered to commence forthwith. (Motion to Compel, p.11.)  To the extent Plaintiffs now face a deadline, such is of their own making. As set forth in detail above, Defendants have not delayed this matter and should not now be

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

penalized with a shortened period for any production which the court may deem appropriate. Plaintiffs have had sufficient time to investigate and contact the non-party employees.  Defendants have repeatedly indicated a willingness to provide information/documents where new plaintiffs are joined or releases are provided.   As set forth in the supporting declarations, this has not occurred.

**C. Whether sanctions should be awarded to either party.**

    **1. Plaintiffs' Position.**

Plaintiffs believe that this motion was entirely unnecessary and any expense should be borne by Defendants.  Plaintiffs met and conferred and attempted to pursue the narrowest discovery necessary for purposes of their class certification motion.  For example, Defendants refused a sampling method to lower costs and eliminate the need for this motion.  Defendants wanted full access to the employment records for purposes of objecting to class certification while denying plaintiffs the same access.  Similarly, Defendants refused to stipulate that Plaintiffs' claims were typical or common with the class and refused Plaintiffs access to the discovery necessary to resolve this issue.  Defendants refused to stipulate that they had failed to maintain records prior to December 2007 and yet refused to provide the evidence as the whether this was true or not.  Defendants also refused to stipulate to any extension of time for the class certification motion (despite first agreeing and then much later reversing their commitment to mediation) – highlighting that the sole motive of Defendants' objections to this discovery and their actions is simply strategic.

Plaintiffs' counsel, Stan Mallisonis experienced class action counsel who practices nation-wide, and was formerly counsel at the two largest class action firms in the country.  Mr. Mallison was recently awarded $525 per hour for his class action employment work by the South District of New York.  Regardless, the number of hours expended in this motion will well exceed the initial estimate of 10 hours which served as the basis for Plaintiffs' request.  Plaintiffs will waive any rights in this request to these attorneys fees but request, in light of this waiver, that this court award the requested attorneys fees at the rate requested.

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

## 2. Defendants' Position.

Defendants do recognize that a party who prevails on a motion to compel is entitled to expenses, including reasonable attorneys fees, unless the losing party was substantially justified in making or opposing the motion. As set forth in detail above, Plaintiffs' request for $5,250 in sanctions should be denied.

Case law supports Jai Alai's position that there is a privacy right in the requested financial and timekeeping records for non-party employees. Any delays have been attributable to Plaintiffs, not Jai Alai. In fact, Plaintiffs have had ample opportunity to contact any non-party employees to either join those employees in the litigation or obtain waivers. They have failed to do so. Finally the hourly rate claimed of $525.00 is unreasonable and not within the customary rates charged in this jurisdiction.

Counsel for Defendants has expended, and/or will expend over 10 hours in preparing and arguing this opposition to motion to compel (See Cercone Declaration). The hourly rate for Defendants' counsel is $250. As such sanctions in the amount of $2,500 are requested.

## IV. PARTIES' CONFERENCES

The parties met and conferred and agreed that they were at impasse on the issue as to Defendants' refusal to produce documents relating to the class. Plaintiffs subsequently filed their motion to compel, and Defendants filed their opposition. The parties met and conferred again for purposes of clarifying their disputes and preparing this joint statement. Plaintiffs reiterated their willingness to enter into a protective order and redact information that is particularly private and not necessary to their motion for class certification. Defendants again asserted the need to protect the privacy rights of their non-party current and former employees.

The parties discussed the relevance of the requested documents. Plaintiffs asked Defendants to stipulate that the time cards and wage statements are relevant to their claims, identifying the

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

specific violations that Plaintiff Garcia's time cards and wage statements show – payment of a fixed-semi-monthly sum that does not account for overtime, doubletime, split shift or meal period pay, even though the corresponding time cards show that Garcia worked overtime, doubletime, split shift and more than six hour shifts without a meal period. Plaintiffs also asked Defendants if they agreed that the requested documents, given what they demonstrate, are relevant for purposes of typicality and commonality. The parties were unable to stipulate that the documents are relevant.

The parties also conferred over the question of privilege, with Defendants agreeing that there was no attorney client privileged or work product rule issues.  However, Defendants' position is that discovery does not warrant an invasion of non-party employees' privacy rights.  Plaintiffs pointed out that they only seek time cards and wage statements, not personnel files.

Plaintiffs asked Defendants how they deal with their privacy concerns when they provide the accountant/bookkeeper with employees' private financial information, offering to sign whatever agreement the accountant/bookkeeper signed. Defendants' counsel could not state whether an instrument is used to safeguard employee rights and to date no instrument has been provided. Defendants did indicate that it is different to provide private information to an accountant for payroll purposes than to opposing counsel in litigation.  Plaintiffs contend that as they are attempting to recover unpaid wages and penalties, it is unclear how their purposes would be constitute a threat to them whereas the accountant's use does not. Although Plaintiffs insist that there is a satisfactory way of safeguarding private information through a protective order, Defendants disagree.  Defendants assert they cannot waive privacy rights belonging to their non-party employees, and that as an alternative they have provided Plaintiffs with the means to obtain the subject documents.

///

///

///

///

///

- 31 -

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

Respectfully submitted,

Dated: August 26, 2008                          LAW OFFICES OF MALLISON & MARTINEZ


                                        By:___/s/____Stan S. Mallison_____
                                            Stan S. Mallison__
                                            Hector R. Martinez
                                            Marco A. Palau
                                            Attorneys for Plaintiffs


Dated:  August 26, 2008                      MARDEROSIAN, RUNYON, CERCONE,
                                                    LEHMAN & ARMO


                                        By:___/s/___Sue Ann Cercone_____
                                            SUE ANN CERCONE,
                                            Attorneys for Defendants above-named.

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT