STAN S. MALLISON (SBN 184191)
HECTOR R. MARTINEZ (SBN 206336)
MARCO A. PALAU (SBN 242340)
LAW OFFICES OF MALLISON & MARTINEZ
1042 Brown Avenue
Lafayette, CA 94549
Telephone:    (925) 283-3842
Facsimile:    (925) 283-3426

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
UNITED STATES FEDERAL DISTRIC COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL CHAVEZ, JOSE GARCIA, FRANCISCO MURGUIA, JUAN MANUEL BERUMEN and JUAN AGUILERA AYALA, on behalf of themselves and all other similarly situated individuals,<br><br>PLAINTIFFS,<br><br>vs.<br><br>DENIS PETRISSANS and NANCY PETRISSANS (doing business as "Jai Alai Diary"),<br><br>Defendants. | Case No. 1:08-cv-00122-LJO-GSA<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    September 21, 2009<br>Time:    8:30 a.m.<br>Judge:   Lawrence J. O'Neill<br>Courtroom:  4 |

**I.    INTRODUCTION**

Plaintiffs Gabriel Chavez, Jose Garcia, Francisco Murguia, Juan Manuel Berumen, and Juan Aguilera Ayala ("Plaintiffs") and defendants Denis Petrissans and Nancy Petrissan (doing business as "Jai Alai" Diary) (hereinafter "Jai Alai"), have agreed to settle this wage-and-hour class action in accordance with the terms of the Settlement Agreement (the "Settlement") attached to the accompanying Mallison Declaration. The Settlement is for $250,000, which covers all Settlement Shares to be paid to Class Members who submit valid claims; a $10,000 payment to the California Labor and Workforce Development Agency for its share of the settlement of civil penalties; the employer share of payroll

taxes on Settlement Shares; the Settlement Administrator's reasonable fees and expenses; and payments to Plaintiffs, in addition to their Settlement Shares, of $5,000 each for their services as Class Representatives, and payment to Class Counsel of their reasonable attorneys' fees not to exceed $83,333 and expenses not to exceed $10,000. The Settlement covers all of Defendants' non-exempt Diary workers in California during the time period from January 24, 2004 until the date of the preliminary approval of settlement. There are approximately 65 Class Members. If approved, the average claim value will be nearly two thousand dollars.

The Settlement is non-reversionary to Jai Alai and, if approved, the entire Settlement payment will be distributed as indicated above. In the event of unclaimed settlement shares the residue will be redistributed on a pro rata basis to the Class Members who make claims. In the unlikely event that a class member makes a claim (which would include verifying the claimant's address), AND has a check mailed to them, AND fails to cash that check even after reminder notices and a reminder call is made, these uncashed check amounts will be donated to California Rural Legal Assistance. This public interest fund provides services directed at low income workers and their families, making this disposition of unclaimed funds appropriate. Given the nature of the process at issue – claimants requesting and receiving checks but not cashing them - Plaintiffs' counsel does not anticipate that the monies relating to these uncashed checks is likely to be substantial.

The Settlement represents informed, closely-negotiated compromises on both sides. The Settlement was reached after an extensive production to Plaintiffs by Jai Alai of the relevant payroll and timekeeping data, and extensive negotiations in front of Mediator Judge Howard Broadman and reflects the terms of a mediator's proposal made post-mediation by Judge Broadman. Based on a detailed knowledge of the issues present in this action, Plaintiffs and their counsel are convinced that the Settlement is the best possible recovery under the circumstances, and in the best interest of Class Members.

Specifically, counsel for Plaintiffs balanced the terms of the Settlement, including both the Settlement amount and the benefits conferred to Class Members by the Settlement, against the probable outcome of a wide range of issues at trial. Counsel for Plaintiffs carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Jai Alai,

the difficulties of complex litigation, the lengthy process of establishing specific damages, the difficulty in fully analyzing and utilizing the evidence at issue in this case, new legal decisions affecting pivotal issues in the case or the pendency of such issues before the California Supreme Court, class certification issues, and other various possible risks and delays. Counsel also considered the current economic climate – specifically in the Dairy industry at issue in this case. Plaintiffs' counsel notes that no matter how good the facts and law, every trial retains inherent risk while the proposed settlement provides a certain recovery for Class Members. Further litigation or trial of the matter would substantially delay any compensation to Class Members.

As discussed below, the Settlement satisfies the criteria for preliminary settlement approval under Federal law and falls well within the range of proper approval. Accordingly, the plaintiffs move the Court for an order conditionally certifying the settlement class and collective action, granting preliminary approval of the Settlement, appointing the Class Representatives and Class Counsel, approving and directing distribution of the Class Notice and related materials to the Class, appointing the Settlement Administrator, and scheduling a final approval hearing.

## II.    STATEMENT OF FACTS

### A.    Summary of the Litigation.

This is a wage-and-hour class action brought on behalf of Dairy workers employed by Jai Alai in and about Kern County, California. Declaration of Stan S. Mallison in Support of Motion for Order: (1) Conditionally Certifying Settlement Class and Collective Action; (2) Preliminarily Approving Class Settlement; (3) Appointing Class Representatives and Class Counsel; (4) Approving Class Notice and Related Materials; (5) Appointing Settlement Administrator; and (6) Scheduling Final Approval Hearing ("Mallison Decl."), ¶3. *See also* Class Action Complaint, filed on January 24, 2008 (Docket No. 2); Amended Class Action Complaint, filed on March 18, 2008 (Docket No. 7). The action is brought on behalf of Plaintiffs and approximately 65 current and former non-exempt Jai Alai employees for alleged violations of federal and state wage-and-hour laws. *Id.* Plaintiffs essentially allege that Jai Alai failed to pay overtime and minimum wages; failed to pay wages due at termination of employment; failed to provide all legally required meal periods and rest breaks; failed to provide accurate, itemized employee wage statements, and failed to compensate employees for travel time and mileage. Plaintiffs sought to

certify a class composed of themselves and similarly situated individuals and to recover back wages, interest, penalties, and attorneys' fees and costs from Defendants.

After the complaint was filed, Plaintiffs conducted substantial discovery and non-discovery investigation regarding class certification and the merits of their claims. Mallison Decl., ¶31. Plaintiffs issued a formal discovery including an extensive set of document requests demanding all of the critical payroll and timekeeping information at issue in this case, and the names and contact information for Jai Alai's former and current employees.  After meeting and conferring regarding these issues, and after the parties agreed to a protective order that was entered by the Court on April 6, 2009 (*see* Docket No. 37), Jai Alai produced the core payroll and timekeeping information as well as the employee names and contact information.  Mallison Decl., ¶31.

Jai Alai's timekeeping system is heavily "paper-based" consisting of thousands of pages of documents. . ¶32.  This heavy reliance on paper document required Plaintiffs' counsel to laboriously copy and review tens of thousands of pages in order to conduct their damage analysis and prepare for full litigation of this case.  ¶32.  Much of the document and data review took place with Plaintiffs and other witnesses who guided counsel through employee time and payroll records, strengthening counsel's understanding of the case, as well as their ability to litigate effectively. ¶32.

### B.     Settlement Negotiations.

This case was resolved through the efforts of Mediator Judge Broadman and resolved by means of a mediator's proposal on the terms proposed to this court. ¶34.  Although the initial mediation was unsuccessful at obtaining a settlement the parties continued to work with Judge Broadman and he eventually resolved the case by means of his mediators proposal. ¶34.  Judge Broadman reviewed financial records, which were also provided to plaintiffs. Plaintiffs' counsel has negotiated numerous class action wage and hour settlements and believe that the settlement would not have been improved by the use of a mediator in this case. ¶34.  The Settlement covers approximately 65-70 current and former Defendants Dairy employees who worked between January 24, 2008 to September 21, 2009 and provides substantial recovery for class members. ¶34; Settlement § I.N.

### III.    SUMMARY OF SETTLEMENT TERMS

### A.     The Gross Settlement Payment.

Under the Settlement, Defendants will make a Gross Settlement Payment of $250,000 in two payments:

   a. $50,000 by September 1, 2009

   b. $200,000 by September 1, 2011

¶35. Judge Broadman's rationale for the extended period for the final payment was a review of Defendants' private financial records. ¶35.

This payment will cover Settlement Shares to be paid to Class Members who submit valid claims; the employer share of payroll taxes on the Settlement Shares; a $10,000 payment to the California Labor and Workforce Development Agency for its share of the settlement of civil penalties; the Settlement Administrator's reasonable fees and expenses (no more than $25,000); and (subject to court approval) payments to Plaintiffs, in addition to their Settlement Shares, of $5,000 each in compensation of their services as Class Representatives and payments to Class Counsel of no more than $83,333 for their reasonable attorneys' fees (33.33%) and $10,000 in expenses incurred in investigating the case, prosecuting the case, preparing for and negotiating at the mediation, documenting the Settlement, securing approval of the Settlement, and related tasks. ¶36. Settlement, § III.A.-C. There will be no reversion of the Gross Settlement Payment to Defendants. ¶36.

**B.    Payment of Settlement Shares.**

After the other amounts are deducted, the Gross Settlement Amount (then called the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims (see Exh. 1 (Settlement) § III), based upon the following allocation formula:

> The Settlement Share for each Claimant will be based on (a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount.

¶37. Agreement, § III.D.1. The primary benefit of this formula is that it relies upon objective evidence of the term of employment, which Class Members can easily review and confirm for themselves. ¶37. This information is readily available from Defendants' records, and the Settlement Administrator can apply the formula in a fair and transparent manner. ¶37. The parties estimate that, if all amounts sought

under the Settlement are awarded, a Class Member's average Settlement Share will approach $2000. ¶37.

Plaintiffs' counsel has reviewed this method of distribution and has determined that, on the whole, it serves the purpose of providing a simple and readily determinable method for distribution, while also allowing for a distribution that corresponds closely to the alleged damages and likely recoveries, which are based upon various theories of liability. Mallison Decl., ¶38. Plaintiffs' counsel considered other, more complicated methods, but determined that although these methods have some merit, that they were not without controversy and would likely lead to a myriad of objections regarding their formulation and implementation. *Id.* The formula employed in the Settlement is commonly used in wage-and-hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims that roughly correlate with the number of hours that they have worked. *Id.* Further, although their might be marginally better theoretical methods for calculating allocations amongst class members, the costs of obtaining and processing the information necessary and to make such calculations (especially given defendants' paper based payroll system) would likely outweigh any benefits of using a more complex calculation method. The above method is simple, efficient, and uncontroversial and should be approved by the court.

### C.    Distribution of Unclaimed Funds and Uncashed Checks.

In the event that not all Class Members submit claims, the residue will be redistributed to those Class Members who do submit valid claims. Settlement, § III.D.3. The settlement agreement provides that that in the event that checks issued to Class Members are not cashed, these monies will be donated to California Rural Legal Assistance. *Id.*, § III.F.10. Because these public interest organizations serve low income workers these donations are appropriate. Mallison Decl., ¶39.

### D.    Scope of the Release.

The scope of the release by all Participating Class Members (all Class Members other than those who elect not to participate in the Settlement) tracks the scope of Plaintiffs' allegations:

> As of the date of the Judgment, all Participating Class Members hereby fully and finally release Jai Alai, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are

improperly compensated under federal, California, or local law (the "Class's Released Claims"). The Class's Released Claims include all such claims for alleged unpaid wages, including overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, including, but not limited to, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and costs and attorneys' fees and expenses.

Settlement, § III.G.2. Plaintiffs also negotiated a "mirror" waiver by defendants of any claims related to the issues in the complaint. Mallison Decl., ¶41; Ex 1 § III.G.3.

### E. Objections and Opt-Out Process

Any Class Member who so wishes may object to or comment on the Settlement; or elect not to participate in the Settlement. The Class Notice fully explains the objection/comment and opt-in procedures. Settlement, § III.F.4., Exh. C.

### F. Termination of Settlement.

Plaintiffs reserve the right to void the Settlement if confirmatory discovery conducted during the approval process reveals that the recovery is not fair, adequate and reasonable under the circumstances. Mallison Decl., ¶41; Ex. 1 § III.F.6. Plaintiffs do not anticipate any such termination of the settlement but are conducting this confirmatory discovery as a means of ensuring the fairness of the settlement for the class and fully carrying out their obligations to the class and the court in this regard.

### G. Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment.

By a motion to be filed prior to the Final Approval Hearing, Plaintiffs and their counsel will seek (and Jai Alai has agreed not to oppose), awards to Plaintiffs of Class Representative Payments of $5,000 each, in addition to their Settlement Shares, in compensation for their services as Class Representatives; and awards to Class Counsel of a Class Counsel Attorneys' Fees Payment of not more than $83,333 or 33-1/3% of the Gross Settlement Amount and a Class Counsel Litigation Expenses Payment of not more than $10,000. Settlement, § III.B.1-2. The exact amounts requested, and their justification, will be detailed in a motion, brief, and declaration to be provided in conjunction with the final approval of the settlement.

## IV. THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED

### A. Preliminary Approval of the Settlement Is Appropriate.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. (See 4 *Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A class action, however, may not be dismissed, compromised, or settled without the approval of the court. Fed. R. Civ. P. 23(e).

Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined procedures and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41). The *Manual*'s settlement approval procedure describes three distinct steps:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected Class Members; and

(3) A "formal fairness hearing," or final settlement approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.*, § 30.41. The procedure, commonly used by federal courts and endorsed by the leading class action commentator, Professor Herbert Newberg, safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See Newberg*, § 11.22 *et seq*.

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the settlement terms and conditions and the scheduling of a formal fairness hearing is worthwhile. To grant preliminary approval of this class action settlement, the court need only find that

the settlement falls within the range of possible final approval, also described as "the range of reasonableness." *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App. 4th 1085, 1089-90 (1994); *In re Traffic Exec. Asss'n*, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4 *Newberg*, § 11.25. In sum, preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval…" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (adding numbers).

The Settlement proposed by the parties meets this test.

### 1. The Settlement Was the Product of Informed, Non-Collusive Negotiations.

The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. As such, the Settlement is the product of non-collusive negotiations. See Mallison Decl., ¶¶34-53. Plaintiffs' counsel had access to thousands of papers of documents which were reviewed prior to and during the negotiations and was informed by numerous interviews with witnesses to the allegations. Mallison Decl., ¶¶45-47.

### 2. The Proposed Settlement Has No "Obvious Deficiencies."

The Settlement is non-reversionary and substantial. The settlement provides for a payment of $250,000 by Jai Alai—an adequate amount given the relatively small size of the class (approximately 65 members) and the limited nature of the alleged violations at issue. The average settlement share is close to $2000. Mallison Decl., ¶37. All Settlement Shares to be paid under the Settlement are determined by the number of months each Class Member worked in a Covered Position. *Id*. The provision for unclaimed funds to be redistributed to Class Members on a pro-rata and uncashed checks donated to California Rural Legal Assistance is appropriate and ensure that all of the net proceeds of the settlement are directed at class members to the extent administratively possible. Mallison Decl., ¶39. Plaintiffs contend (and Jai Alai does not contest) that both the Class Representative Payments and the Class Counsel Attorneys' Fees Payment are appropriate, and regardless they are subject to court approval at

the Final Approval hearing. Finally, the expected Settlement Administrator's fees and costs of less $25,000 are in line with wage-and-hour settlements of this type and size. Mallison Decl., ¶36.

### 3. The Settlement Falls Well Within the Range of Possible Approval.

The Settlement falls within the range of possible approval. To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. The Settlement should be approved because it confers a substantial benefit on the Class Members of nearly $2000 per potential claimant (Mallison Decl., ¶37), while proceeding with litigation would impose significant risk.

#### a. Liability Is Contested, and the Settlement Provides Class Members Substantial Monetary Relief.

Plaintiffs' counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Jai Alai. Mallison Decl., ¶45. Plaintiffs' counsel interviewed numerous witnesses, and thoroughly reviewed thousand of pages of documents produced by Jai Alai to produce an accurate damage model of the number of possible violations at issue. *Id*. In addition, as part of the confirmatory discovery required by the settlement agreement, Plaintiffs will have access to dozens of additional boxes of payroll and timekeeping records. *Id*.

For its part, Jai Alai contests liability in this action, is represented by talented counsel, and is prepared to vigorously defend against these claims if the action is not settled. Mallison Decl., ¶47. If the litigation proceeds, Plaintiffs would face significant risk of success. Mallison Decl., ¶47. For example, the primary cause of action in this case revolves around the provision of meal periods. However, the meaning of an employer's obligation to provide meal periods under California law is currently before the California Supreme Court (*see Brinker Restaurant Corp. v. Superior Court (Hohnbaum)*, 165 Cal. App. 4th 25 (2008) (review granted)), and resolution of the issue cannot be predicted with certainty. Mallison Decl., ¶47. As such, there is significant risk that legal developments could seriously diminish the value of Plaintiffs' claims. Moreover, even if Plaintiffs could demonstrate such violations, there still would be substantial risk the Class would not be certified by the Court. There is also a substantial risk

that Jai Alai would prevail in its asserted defenses.

The Settlement provides for a substantial recovery. Mallison Decl., ¶48.  Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation. In any case, continued litigation would clearly delay payment to the Class. *Id*.

As such, the Settlement with Jai Alai for the consideration and on the terms set forth in the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of the significant delay. Mallison Decl., ¶48.  The Settlement is in the best interest of judicial efficiency in this case as it would obviously eliminate a lengthy and intense class action lawsuit from this court's calendar. *Id.*

### b.   The Release Is Appropriate Given Plaintiffs' Claims.

As described above, as part of the Settlement, the Class Members will be deemed to have released all those claims "based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law."  Settlement, § III.  These released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.  Notably, the release also releases class members from any complaint related counter or cross-claims, if any, that defendants may have against plaintiffs.

### B.   Conditional Certification of a Settlement Class Is Appropriate.

Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P. 23(c)(1)). Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met.

Here, the proposed class is comprised of all individuals who have been employed by Jai Alai in California as non-exempt Dairy worker during the period from January 24, 2004 to July 31, 2009. There are approximately 65 Class Members.

### 1. The Numerosity Requirement Is Met.

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). Here, the count of approximately 65 similarly situated Class Members satisfies the numerosity requirement.

### 2. The Commonality Requirement Is Met.

Here, for purposes of the Settlement only, the parties agree that common questions of both fact and law exist regarding Jai Alai's alleged failure to abide by federal and state wage-and-hour law, including:

- whether Jai Alai failed to provide Dairy workers with required meal periods;
- whether Jai Alai failed to pay Dairy workers wages for meal periods during which they remained on duty;
- whether Jai Alai authorized and permitted the Dairy workers to take required rest periods;
- whether Jai Alai failed to pay Dairy workers an additional hour of wages for missed meal periods and rest breaks;
- whether Jai Alai failed to pay all legally required minimum wages and overtime compensation to hourly production workers;
- whether hourly production workers are owed waiting time penalties because Jai Alai allegedly willfully failed to pay them additional wages for missed meal periods and rest breaks, and for meal periods taken during which they remained on duty, upon the termination of their employment; and
- whether Jai Alai's business practices violated Business and Professions Code section 17200 *et seq*.

### 3. The Typicality Requirement Is Met.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Plaintiffs' claims are essentially identical with the class as whole as they are Dairy workers who were paid under the same pay practices as every other class member. Mallison Decl ¶50.

### 4. Adequacy of Representation.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show that: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469.

The adequacy of representation requirement is met here because Plaintiffs have the same interests as the remaining members of the Settlement Class, there is no conflict between the named Plaintiffs' claims and those of the other Class Members, and Plaintiffs are represented by experienced and competent counsel who has experience in litigating over 40 wage and hour class action cases. *See* Mallison Decl., ¶5.

### 5. Class Certification Is Proper Under Rule 23(b)(3).

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b).

Here, the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and…a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### D. The Proposed Notice, the Claim Form, the Form of Election Not to Participate, and the Notice Plan Are Fair and Adequate.

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. U.S.*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the proposed Class Notice (Settlement, Exh. 2), and the manner of notice agreed upon by the parties (Settlement, § III.E.2.) is "the best notice practicable," as required under Rule 23(c)(2)(B), Federal Rules of Civil Procedure. All Class Members can be identified and the Class Notice and the related materials (the Claim Form, Settlement, Exh. 3, and the form of Election Not to Participate in Settlement, *id.*, Exh. 4) will be mailed directly to each Class Member. The Class Notice adequately

informs Class Members of the nature of the litigation, the essential terms of the Settlement, and how to make a claim under the Settlement, object to or comment on the Settlement, or elect not to participate in the Settlement. Further, the Class Notice identifies Class Counsel, specifies the amounts of the Class Representative Payments, Class Counsel Attorneys' Fees Payment, and Class Counsel Litigation Expenses Payment that Plaintiffs and Class Counsel will seek, and explains how to obtain additional information regarding the action and the Settlement.

Specifically, within 14 days after the Court grants preliminary approval of the Settlement, Jai Alai will provide the Settlement Administrator with a database containing the name and current or last known address of each Class Member, as well as other data necessary to calculate Settlement Shares and administer the Settlement. Settlement, § III.E.2.a. The Class Notice and other materials will be mailed by the Settlement Administrator within 10 days following Jai Alai's delivery of the Class Members' data. *Id.*, § III.E.2.b. The Settlement Administrator also will send a reminder notice 14 days before the deadline for Class Members to submit claims. *Id.*, § III.E.2.e. The Settlement Administrator will use the National Change of Address database to locate any Class Members whose Notices are returned as undeliverable. *Id.*, § III.D. Not later than when the parties file their motion for final approval of the Settlement, the Settlement Administrator will submit a declaration describing efforts made to locate all Class Members. *Id.*, § III.E.2.f.

In sum, the procedures set forth in the Settlement provide the best possible notice to the Class Members.

**E.    Rust Consulting, Inc., Should Be Appointed the Settlement Administrator.**

The parties have agreed upon and propose that the Court appoint Rust Consulting, Inc., to serve as the Settlement Administrator. Rust Consulting is very experienced in administering wage-and-hour class action settlements, and has bid its fees and costs for this Settlement at under $25,000. Mallison Decl., ¶62, Exh. 5.

**F.    Proposed Schedule.**

Plaintiffs propose the following schedule for approval of the Settlement:

| Date | Event |
|---|---|
| 09/21/09 | Preliminary Approval hearing (all dates that follow assume this date) |
| 10/05/09 | Jai Alai to provide to Settlement Administrator with an electronic data base containing Class Member contact information and data necessary to calculate settlement shares (14 days after Preliminary Approval) |
| 10/15/09 | Settlement Administrator to mail Notice Packets to all Class Members (10 days after receiving Class Member information) |
| 11/02/09 | Date for Settlement Administrator to contact Class Members who have not submitted Claim Forms to remind them of the of the upcoming deadline |
| 11/16/09 | Last day for Class Members to comment on or object to Settlement (30 days after mailing of Notice Packets), to mail valid Elections Not to Participate in Settlement, and to mail valid claims for Settlement Shares (30 days after mailing of Notice Packets) |
| 11/20/09 | Last day for Settlement Administrator to report to parties on Class Members who have elected not to participate in Settlement or who have submitted claims (7 days after the deadline for submission of Elections Not to Participate in Settlement and Claims Forms) |
| 11/25/09 | Last day for Settlement Administrator to serve on the parties and file with the Court statement of due diligence in complying with its obligations under the settlement. |
| 12/01/09 | Due date for joint motion for final approval of settlement and plaintiff's separate motion for class representative fee and class counsel's attorneys' fees and expenses |
| 12/14/09 | Final approval hearing |

## V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this motion in its entirety and enter an order: (1) conditionally certifying the Settlement Class; (2) granting preliminary approval of the Settlement; (3) appointing Plaintiffs as the Class Representatives and Plaintiffs' counsel as the Class Counsel; (4) approving and directing the mailing of the Class Notice and related materials;

(5) appointing Rust Consulting, Inc., as the Settlement Administrator; and (6) scheduling the Final Approval Hearing for December 14, 2009, or as soon thereafter as is available and convenient for the Court.

Dated:  September 10, 2009.

STAN S. MALLISON
HECTOR R. MARTINEZ
MARCO A. PALAU
LAW OFFICES OF MALLISON & MARTINEZ


By: __/s/ Stan Mallison_____
        Stan S. Mallison
       Attorneys for Plaintiffs